*Order*

## Haug et ux. v. Old Guard Mutual Insurance Co.

*Charles W. Eaby*, for plaintiffs.

*Charles E. Workman*, for defendant.

BURKHOLDER, J., May 27, 1955.—Plaintiffs filed their complaint in assumpsit against defendant insurance company alleging that "Hurricane Hazel blew the roof and part of the end off [their] barn" causing damage amounting to $274.18 which was covered by an insurance policy issued by defendant.

Defendant filed its answer alleging that plaintiffs "in their first proof of loss . . . fixed the loss and damage at $268.70"; that under the provisions of the policy this loss had to be prorated because, in addition to the $2,000 of insurance on the barn under defendant's policy, there was $2,000 more insurance on the same barn written by another company; that under the terms of defendant's policy "metal roofs are not insured against storm"; that "plaintiffs filed two proofs of loss: One, on October 29, 1954, claiming $268.70 for roof damage; the other, on November 26, 1954, claiming $274.18 . . . for damage to the roof and damage to part of the end of the barn."

Plaintiffs filed their reply setting forth "that the cost of repairing the barn was $169.68 and the cost of repairing the metal roof was $104.50".

This matter is before the court at this time on the motion of plaintiffs for judgment on the pleadings. None of the facts material to the determination of this case are denied. Plaintiffs contend that under the terms of their policy they are entitled to recover $169.68, being the entire amount of the damages to the barn excepting the cost of repairing the metal roof. Defendant admits that this amount is correct but denies that it owes plaintiffs this amount for two reasons. In the first place, there must be deducted

$10 which is excluded by the terms of the policy, and, in the second place, defendant is liable for only half of the balance because the total fire insurance on the barn was $4,000, only half of which, $2,000, was covered by defendant. In other words, defendant admits that it owes plaintiff $79.84 as follows:

Damage to barn .................................$169.68
Amount deductible under the terms of the policy.... 10.00

Balance .......................................$159.68
One-half, which the defendant admits to be due.....$ 79.84

Plaintiffs contend that the loss should not be pro-rated between the two policies because the second policy did not insure against loss caused by storm although they admit that both policies protected against loss to the barn caused by fire.

This contention of plaintiffs cannot be sustained. A fire insurance policy is a contract between the assured and the insurance company and both of the parties thereto are bound by its terms. In the case at bar the policy in question contains at least four separate clauses providing for apportionment. For the purposes of this opinion, it is necessary to quote only one of them. Paragraph four of the extended coverage endorsement provides that "This company shall not be liable for a greater proportion of any loss from any peril or perils included in this endorsement than . . . the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, whether valid or not and whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured hereunder".

There is no doubt about the meaning of this language. Apportionment shall be made on the basis of the total amount of fire insurance covering the property "whether or not such other fire insurance covers

against the additional peril [i.e., damage by storm] insured hereunder".

In Miller v. The Home Insurance Company, 108 Pa. Superior Ct. 278 (1933), 164 Atl. 819, defendant company issued an insurance policy insuring against loss to a barn and dwelling by tornado, wind-storm or cyclone. Another company issued a policy of fire insurance on the same buildings to which a rider was attached including loss caused by lightning, tornado or cyclone. The buildings were damaged by a wind-storm. Plaintiff claimed the right to recover all of the loss to the limits of the policy from defendant on the ground that the identity of the risk was not the same in spite of the fact that the policy provided that if there " 'be any other tornado insurance or contract of tornado insurance, whether valid or not, on the property . . . claim upon this company shall be only for such proportion of the loss as the amount of this policy shall bear to the whole insurance' ".

The lower court entered judgment in favor of plaintiff without proration. The Superior Court in reversing this decision said:

"In considering the question of identity of risk, we note that the problem may arise in different situations. It may signify one thing where the right of recovery is dependent upon the principles of equitable contribution, and have another meaning where the basis of a claim is a contract. . . . By the terms of the contract, if there was 'any other tornado insurance or contract of tornado insurance, whether valid or not', on the barn and the dwelling, the defendant was to be liable only for its pro-rata share of the loss. . . . We are asked to move into a new field and modify a written contract that is clear and specific by 'engrafting upon it the rules governing suits for contribution among insurers'. The primary question here involves rather the construction of a written contract than the rules of contribution."

In Carlisle Trust Company, Trustee, v. Patrons' Mutual Fire Insurance Company of Southern Pennsylvania, 23 D. & C. 289 (1935), the facts are almost identical with the case at bar. In that case the insurance company insured barns on two farms of plaintiff against fire. Attached by rider to each policy was the following clause:

" 'This policy shall also cover any direct loss or damage to the property insured by it, caused by lightning, tornado or cyclone, not exceeding the sum so insured, nor the interest of the insured in the property, and subject in all other respects to the terms and conditions of this policy. Provided, however, if there shall be any other insurance on said property, this company shall be liable only pro-rata with such other insurance for any direct loss by lightning, tornado or cyclone, whether such other insurance be against direct loss by lightning, tornado or not.' "

As in the case at bar, plaintiff had policies in other companies insuring the barns against loss by fire but not tornado or cyclone. The barns were damaged by cyclone and plaintiff contended that defendant was not entitled to prorate this loss with the other fire insurance policies which did not include protection from tornado or cyclone. The Court of Common Pleas of Cumberland County, by Reese, P. J., in refusing plaintiff's contention, made the same distinction made by the Supreme Court in Miller v. The Home Insurance Company, supra, saying that "The question here involves the construction and interpretation of the clause . . . which insured the plaintiff against loss by cyclone or tornado".

To the same effect is Coull v. Union Mutual Fire and Storm Insurance Company, 42 Montg. 46 (1925).

The court is of the opinion that in the case at bar defendant is not liable for the damages to the metal roof, is entitled under the terms of the policy to de-

duct $10 from the damage to the barn, and is entitled to prorate the balance of this damage in the same ratio that the face amount of the insurance on the barn issued by defendant bears to the total insurance on the barn ($2,000 to $4,000). This amounts to $79.84 plus interest.

According to the pleadings defendant made a tender of $134.35 to plaintiff on November 2, 1954, which was refused. This suit was commenced on January 27, 1955. On February 24, 1955, defendant filed its petition for leave to pay this amount with interest from November 2, 1954, to February 24, 1955, amounting to $2.60, into court to make good this tender. The leave prayed for was granted with notice at bar to counsel for plaintiff and on the same day this amount was paid into court and all costs then accrued including the costs of this petition and the poundage were paid in full by defendant. This procedure is sanctioned by the common law as well as by the Act of March 12, 1867, P. L. 35, sec. 1, 12 PS §§1072 and 1073, which is merely expressive of the common law.

When a tender is refused and the money is paid into court in this kind of proceeding the entire fund paid into court immediately becomes the property of plaintiff, may be withdrawn by plaintiff at any time, and will prevent plaintiff from recovering additional costs unless upon final determination of the cause it is found that defendant owed plaintiff more than the total amount of the tender: Thomas v. Nichols, 77 Pa. Superior Ct. 82, 84 (1921), and cases cited therein.

In Berkheimer v. Geise et al., 82 Pa. 64 (1876), $200 was paid into court to make good a tender. Arbitrators finally found in favor of plaintiff for $158.40 and costs. The court below made an order refunding to defendant out of the $200 the balance remaining

after payment of the award and costs. On appeal, the Supreme Court in a per curiam opinion reversed the court below, saying "that the money paid [into court] is admitted to belong to the plaintiff, and in no event can be recovered and paid back to the defendant, even though the plaintiff goes on to a trial to recover a greater sum . . . if the plaintiff recover no greater sum than that brought into court, he cannot recover costs . . . the money brought [into court] is admitted to be due and owing to the plaintiff . . . the payment is an act of record which admits the money to belong to the plaintiff, and therefore . . . the defendant cannot take it back.

"We think that the court below erred in allowing the defendant to take out of court the excess of the sum paid into court above the sum of the award and the costs incurred up to the time of payment into court."

This case has been cited with approval frequently and expresses the law as it is today. The court, therefore, is of the opinion that in the case at bar plaintiffs are entitled to take the entire fund paid into court upon condition that they pay all of the costs accrued in this proceeding since February 24, 1955, which were not then paid by defendant. The court is further of the opinion that judgment on the pleadings should be entered in favor of defendant but that this judgment does not carry with it the right to recover the costs which were paid by defendant on February 24, 1955, or any part of the money paid into court, all of which belongs to plaintiff.

And now, May 27, 1955, judgment is entered on the pleadings in favor of defendant, Old Guard Mutual Insurance Company, and against plaintiffs, Paul Haug and Catherine R. Haug, in accordance with this opinion.